UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANK ROBINSON, ) | |
| Petitioner, ) | |
| ) | Civil Action No. |
| v. ) | 11-10541-FDS |
| DUANE MACEACHERN, ) | |
| Respondent. ) | |

MEMORANDUM AND ORDER ON
PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS

**SAYLOR, J.**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody. Petitioner Frank Robinson was convicted of second-degree felony murder and kidnapping in Massachusetts Superior Court on January 20, 2000. On direct appellate review, the Massachusetts Appeals Court affirmed the murder conviction but vacated the kidnapping conviction. Robinson is currently serving a term of life imprisonment at the Massachusetts Correctional Institution in Shirley, Massachusetts.

After his direct appeal was denied, Robinson filed a motion for new trial on the grounds that his trial and appellate counsel were ineffective and that the court improperly denied his motion for severance. Specifically, and among other things, Robinson alleged that (1) his trial counsel was ineffective for failing to object to the Commonwealth's use of peremptory challenges to strike African-American jurors and (2) that his appellate counsel was ineffective for not arguing that the trial judge abused his discretion in not stopping the improper challenges. The motion for new trial was denied, and the Massachusetts Appeals Court affirmed the denial.

The SJC then denied petitioner's application for further appellate review.

After the SJC's decision, petitioner filed a petition for habeas relief in this Court pursuant to 28 U.S.C. § 2254 alleging violations of his constitutional rights to a fair trial, due process, equal protection, and effective assistance of counsel.

For the reasons set forth below, the petition for a writ of habeas corpus will be denied.

## I.     Background

### A.     The Trial

The facts surrounding the crime that led to petitioner's conviction are extensively set out in the decision of the Massachusetts Appeals Court on the petitioner's direct appeal, and only the facts that are relevant to this opinion bear repetition.  *See Commonwealth v. Robinson*, 48 Mass. App. Ct. 329 (1999).  The petition now before the Court concerns not the events of the crime, but events that transpired at trial, on direct appeal, and in collateral proceedings.

Petitioner, along with co-defendants Keith Fitzpatrick, Eugene Christopher Hayes, and Karal L. Hayes, was indicted on July 25, 1995, on charges of first-degree murder, kidnapping, armed robbery, unlawful firearm possession, and conspiracy.  All of the defendants were tried together beginning on September 10, 1996.  Petitioner was represented at trial by Robert Nelson.

Near the conclusion of the first day of trial, it became clear that a full jury would not be successfully empaneled.  During a sidebar conference, the trial court stated that it would dismiss five more potential jurors for cause and re-commence empanelment the following morning.  Just before the court terminated the sidebar, however, the following was raised by counsel for defendant Karla Hayes (Joan Stanley), and counsel for defendant Eugene Christopher Hayes

(John H. Cunha):

| | |
|---|---|
| MS. STANLEY: | One thing I did notice that I wanted to note for the record. This particular jury pool had very few black people. We had two that were – that looked like they were going to be seated. Both were challenged by the prosecutor. |
| THE COURT: | Well, the court is not blind to what is occurring here; but someone's got to step up to the plate and bring an objection. It's too late. |
| MR. CUNHA: | If I could just say this, Judge. I know you don't have control of the new jury pool, but we're going to get new jury pools tomorrow. And I really don't know – but there were four blacks on this jury pool. One was challenged by Ms. Stanley. Two were challenged by the Commonwealth. One is seated now but is subject to challenge, and I don't know whether or not she'll remain. If possible, I simply request that if possible that we try to get – |
| THE COURT: | If there was an objection made, I would have stopped the challenges. There wasn't. |
| MR. CUNHA: | We were going to put it on the record. |
| THE COURT: | Well, you've got to put it on the record timely. |
| MR. CUNHA: | It wasn't clear to me, Judge, that there was a pattern by the Commonwealth; and that's why I didn't object. |
| THE COURT: | All right. |
| MR. CUNHA: | I just wanted to – |
| THE COURT: | I'm just indicating to you that you're bringing it up to me now and it's too late to bring it up to me now. There's a time to do it, and the Court would have listened. |

The court then proceeded to dismiss the five jurors and adjourned the proceedings for the day.

The next day, after the new jury venire was sworn in, attorney Cunha requested a conference at sidebar. The following dialogue then ensued:

| | |
|---|---|
| MR. CUNHA: | I'm sorry. I object to the venire as being representative of the community. I counted four black people in the venire. I really don't know how many there are, but there's 60 or 70 I would think. And that's certainly not representative of the City of Boston in Suffolk County. So I object to the venire. |
| MS. STANLEY: | I join in the objection, your Honor. |
| MR. NELSON: | I also join. |
| MR. FORD: | And I also join. |
| THE COURT: | Well, are you suggesting that we're supposed to have a percentage of the jury – some hypothetical ratio of blacks to whites to Asians |

3

|||
|---|---|
| | to men, women, or what?  I have to take what the jury commissioner sends here.  I presume that he is selecting jurors under the prescribed method of summoning them in for jury duty. |
| MR. CUNHA: | Your Honor, I'm certainly not holding the Court in any way – |
| THE COURT: | I understand.  I understand.  But you're objecting to the system, I presume. |
| MR. CUNHA: | But yesterday we had more people than today.  I beleieve we were told we were going to have over 100 or more, and there were four black people in that venire.  This morning we have somewhat less people because we don't have anyone standing and we don't have anybody seated on the side.  We have four again. |
| THE COURT: | There were four black people yesterday, and three of them were challenged, some by the defense, some by the Commonwealth, without object[ion]. |
| MR. CUNHA: | Yes, your Honor.  One was challenged by Ms. Stanley.  Two were challenged by the Commonwealth. |
| MR. FORD: | There was an objection, but it wasn't a timely objection. |
| THE COURT: | It was not timely, obviously.  I have to make the observation that one of the jurors, the woman challenged late yesterday, was up in front of me several times; and I had serious doubts about her capability of serving as a juror.  And I think maybe counsel agree with me in that regard. |
| MR. CUNHA: | I did agree with you, your Honor.  And, frankly, that was one of the reasons that we didn't raise the objection to the Commonwealth striking her. |
| THE COURT: | Your objections are noted, but I ask everybody to be very sensitive, if any juror is called, to be very sensitive to the right of the defendants to have a jury of their peers and to refrain from challenging without justification. |
| MR. CUNHA: | Is it possible to make inquiry, your Honor, of the jury pool at this point to see if there are venires that have a greater percentage of minorities than we have here now? |
| THE COURT: | We've got most of the jury pool right here. |
| MS. STANLEY: | The judge across the hall was upset because we got them first this morning. |
| THE COURT: | We got them first his morning, and I told them I wanted as many as I could get.  So we're going to continue. |

The jury empanelment was then completed.  The Commonwealth exercised a total of seven peremptory challenges during the entire empanelment, two of which were used to strike African-American jurors.  Ultimately, the jury that heard the case had two African-American

members.

The jury returned a verdict of guilty with respect to petitioner on the lesser-included count of second-degree felony murder and on the count of kidnapping.  Robinson was sentenced to life imprisonment for the murder charge.

### B.     The Direct Appeal

Robinson timely filed a direct appeal of his conviction in the Massachusetts Court of Appeals.  His appellate counsel, Maxine Sushelsky, made the following arguments in support of his appeal:  (1) that there was insufficient evidence to sustain the conviction; (2) that the jury was not properly instructed; (3) that trial counsel was ineffective for not moving for a directed verdict; and (4) that the kidnaping conviction was duplicative.  The Massachusetts Appeals Court affirmed the second-degree felony murder conviction but vacated the kidnapping conviction.  Robinson filed an application for leave to obtain further appellate review before the SJC, but that court denied his application on March 1, 2000.

### C.     The New Trial Motions and Appeal

On February 23, 2001, Robinson filed a *pro se* motion for a new trial.  As grounds for a new trial, he contended that his trial and appellate counsel were ineffective and that the trial judge had erred in denying his motion to sever his case from that of his co-defendants.  As to the ineffective assistance claim, Robinson cited five specific instances of allegedly deficient performance:  (1) trial counsel's failure to object to the Commonwealth's allegedly improper use of peremptory challenges to strike African-Americans; (2) appellate counsel's decision not to contend that the trial judge abused his discretion in not preventing the Commonwealth from improperly using its peremptory challenges on African-Americans; (3) trial counsel's failure to

call and subpoena his alibi witnesses; (4) trial counsel's failure to impeach the Commonwealth's key witness with rebuttal testimony; and (5) trial counsel's failure to confer with him about severing his trial and subsequent misrepresentation that he had done so.

The motion for a new trial was denied. The court found that Robinson's claims as to ineffective assistance of trial counsel were waived because he had failed to raise them on direct appeal. The court further found that appellate counsel had not been ineffective.

Robinson then moved for, and was granted, leave to file a belated notice of appeal as to the court's decision on his new-trial motion.[1] While the court was considering that motion, Robinson filed a *pro se* motion for release from unlawful restraint on August 21, 2001, seeking dismissal of his indictment on the grounds that the Commonwealth presented false and misleading testimony to the grand jury, and again alleging ineffective assistance of trial and appellate counsel for substantially the same actions raised in the new-trial motion. The motion for release from unlawful restraint was summarily denied.

On July 12, 2005, Robinson filed a second amended motion for a new trial, alleging (1) that the Commonwealth misused its peremptory challenges, and the trial court failed to infer discriminatory behavior from the use of the Commonwealth's peremptory challenges, and (2) hen did not waive his right to challenge the Commonwealth and trial judge's failure to remedy the Commonwealth's improper exercise of its peremptory challenges. However, Robinson subsequently filed a motion to strike the second amended motion for a new trial, which was summarily granted.

---

[1] Robinson filed that motion for leave on July 2, 2001, but the court did not grant the requested leave until March 23, 2004. Nothing in the record indicates that this significant delay was the fault of Robinson. Accordingly, this Court finds that it has no bearing on the issues raised in the petition now before it.

On November 1, 2007, Robinson filed a motion to reconsider the denial of his new trial motion.  The court denied that motion to reconsider on April 27, 2009.  He filed a notice of appeal on May 1, noting that the underlying motion for a new trial had "not been entered in the appellate court, and this notice seeks appellate review of the new trial motion and reconsideration denials."  As grounds for the appeal of his new-trial motion, he contended that (1) the trial court committed error by failing to intervene after a defense objection citing the prosecution's alleged discriminatory use of peremptory challenges against African-Americans; (2) the trial judge erred in ruling that the defense objections were waived because they were untimely; (3) trial counsel's failure to join the co-defendants' objections to the prosecution's use of its peremptory challenges constituted ineffective assistance of counsel; (4) the motion judge erred by failing to credit the trial judge's statement that the prosecution's pattern of peremptory challenges was *prima facie* evidence of discrimination; and (5) the motion judge erred in ruling that appellate counsel waived trial counsel's ineffectiveness.

On November 17, 2010, the Massachusetts Appeals Court affirmed the trial court's orders denying the new-trial motion and the subsequent motion for reconsideration.  The court found that "to the extent that the defendant's claims of ineffective assistance [were] properly before [it], they [were] waived for substantially the reasons set forth in Commonwealth's brief," but did not articulate precisely what those reasons were.[2]  However, the court went on to note that

---

[2] The Commonwealth's brief argued that the entire appeal was untimely; although petitioner had been granted leave to file a late notice of appeal, he had waited more than five years after that leave was granted to file it. The Commonwealth also argued that the ineffective-assistance claim with regard to trial counsel was waived because petitioner failed to raise the claim on direct appeal, and appellate counsel was unaffiliated with trial counsel. The Commonwealth's brief also argued that the underlying objection to the government's use of peremptory challenges was waived because it was not timely raised at trial.

7

> [t]he record in the present case is inadequate to establish a prima facie case of discriminatory use of peremptory challenges.  The trial prosecutor exercised seven peremptory challenges, only two of which were directed to African-American jurors.  The record appears to reflect consensus among the parties that one of those two was unsuited to serve on the jury. Two other African-American jurors were seated, without objection by the prosecutor.  Two members of the jury that eventually deliberated in the case were African-American. The record does not establish the racial composition of the venire pool.

The SJC subsequently denied Robinson's application for further appellate review on February 10, 2011.

On March 30, 2011, Robinson commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 on the basis of alleged violations of his constitutional rights to a fair trial, due process, equal protection, and effective assistance of counsel.  As specific grounds for habeas relief, he contends that the following findings by the Massachusetts Appeals Court were based on an unreasonable determination of the record evidence:  (1) that the trial court record was "inadequate to establish a prima facie case of discriminatory use of peremptory challenges;" (2) that the trial court record "[did] not establish the racial composition of the venire pool;" (3) that the trial judge's finding of discrimination was "ambiguous;" and (4) that the trial court did not err in finding that the co-defendant's objections were untimely.  He also contends that the Appeals Court's holding as to his burden of proof on appeal—that he had the burden to establish that a timely objection would have yielded a material benefit to the defense—was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## II. <u>Standard of Review</u>

A federal court may not grant an application for a writ of habeas corpus for a person in state custody unless the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States, "or the decision was an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Factual determinations made by the state court are presumed correct and a petitioner bears the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both state trial and appellate court factual determinations. *See Sumner v. Mata*, 449 U.S. 539, 545-547 (1981).

However, "federal habeas review is precluded, as a general proposition, when a state court has reached its decision on the basis of an adequate and independent state-law ground." *Burks v. DuBois*, 55 F.3d 712, 716 (1st Cir. 1995), *citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991). *See also Lambrix v. Singletary*, 520 U.S. 518 (1997). This rule extends to situations in which "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30. A state procedural rule is "adequate" if it is regularly or consistently applied by the state courts. *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), *citing Hathorn v. Lovorn*, 457 U.S. 255, 262-263 (1982). The rule is "independent" if it does not depend on a federal constitutional ruling. *Id., citing Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). The doctrine may apply even where the state procedural default is offered as an "alternative" basis for a decision. *Coleman*, 501 U.S. at 733.

### III. Analysis

#### A. Commonwealth's Use of Peremptory Challenges

Petitioner's stand-alone constitutional claims regarding the Commonwealth's exercise of its peremptory challenges appeared for the first time in his appeal from the denial of his motion

for a new trial and motion for reconsideration.[3]  For the reasons set forth below, the Court finds that the claims are procedurally defaulted.

There are two Massachusetts procedural rules that operated to foreclose petitioner full review of these claims by Massachusetts courts and render the claims procedurally defaulted here.  First, Massachusetts has "a long standing rule that issues not [timely] raised at trial . . . are treated as waived . . . ."  *Commonwealth v. Curtis*, 417 Mass. 691, 626 (1994).  A state court decision based on a petitioner's failure to comply with a contemporaneous-objection rule constitutes an adequate and independent state ground.  *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977).  Second, Massachusetts courts have long held that "[a] motion for a new trial may not be used as a vehicle to compel review and consideration of questions of law, on which a defendant has had his day in an appellate court, or on which he has foregone that opportunity."  *Commonwealth v. Watson*, 409 Mass. 110, 112 (1991).

Here, petitioner's trial counsel did not join the initial objection of other defense counsel to the Commonwealth's use of peremptory challenges.  Hence, he did not make a contemporaneous objection.  Additionally, even if the technical failure to join the objection was overlooked, the trial judge determined that the objection was not timely and failed to consider it on the merits.  As a consequence, and whichever way the court's decision is interpreted, the contemporaneous-objection rule acted as a procedural bar to the petitioner later raising the issue.

Compounding the problem, petitioner also failed to raise the issue of the Commonwealth's use of peremptory challenges in his direct appeal, raising it for the first time in his appeal from the denial of his motion for a new trial.  As mentioned above, Massachusetts

---

[3] He apparently first articulated these claims in his second amended motion for a new trial, but, as noted above, voluntarily withdrew that motion before the court could consider it.

courts will not consider issues in a motion for a new trial, let alone an appeal from such a motion, when they have not been properly raised on direct appeal. Consequently, even if the trial judge erred in his ruling on the timeliness of the objection, the constitutional claims regarding the Commonwealth's use of peremptory challenges were not properly before the Appeals Court.

The Appeals Court apparently recognized this default, and examined the claims regarding the peremptory challenges only in the context of petitioner's ineffective-assistance claims. The court nonetheless examined the trial record and refused to give binding, substantive effect to the trial judge's comments regarding the peremptory challenges to African-American jurors. The court, in declining to engage the constitutional challenges substantively, noted that the objection was "plainly considered untimely" by the trial judge. That limited review does not operate as a waiver of the underlying procedural default, but rather constitutes an independent and adequate state ground supporting application of the procedural-default rule. *Accord Burks v. Dubois*, 55 F.3d 712 at 716, n. 2 (1st Cir. 1995); *Simpson v. Matesanz*, 175 F.3d 200, 207 (1st Cir. 1999). The Appeals Court ultimately found no error, much less a substantial risk of a miscarriage of justice. The SJC affirmed and agreed with the lower court's reasoning.

A petitioner who has procedurally defaulted a claim by failing to make a contemporaneous objection or failing to raise the claim on direct appeal must either show cause and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (holding that a petitioner who failed to argue his plea was involuntary on direct appeal had procedurally defaulted the claim). Representation by constitutionally ineffective counsel may constitute cause for a procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

However, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted . . . ." *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000). As discussed below, petitioner's claim of ineffective assistance of trial counsel is itself procedurally defaulted. Accordingly, the procedural default of petitioner's underlying claim regarding the Commonwealth's use of peremptory challenges cannot be excused. The Court will therefore not grant habeas corpus relief on those grounds.

### B.     Ineffective Assistance

Petitioner contends that his trial counsel's failures to object to the Commonwealth's use of peremptory challenges and to join his co-defendant's counsel's untimely objection constituted ineffective assistance of counsel in violation of his Sixth Amendment rights. Petitioner also contends that his appellate counsel's failure to challenge the judge's ruling on the objection and failure to raise the peremptory-challenge argument on appeal also constituted ineffective assistance of counsel.

#### 1.     Ineffective Assistance of Trial Counsel

Petitioner's claim of ineffective assistance of trial counsel is procedurally defaulted because he failed to raise it on direct appeal, notwithstanding the fact that appellate counsel was not affiliated with trial counsel. The Appeals Court recognized this default, and, citing the Commonwealth's brief, held that petitioner's claim for ineffective assistance of trial counsel had been waived.

Petitioner contends that he was not obligated to raise the ineffective assistance claim on direct appeal because Massachusetts law "strongly disfavors raising ineffective assistance claims on direct appeal." *Commonwealth v. Zinser*, 446 Mass. 807, 809 (2006). Therefore, he

contends, the claim is not procedurally defaulted.

Petitioner's argument fails for two reasons. First, as a federal court performing habeas corpus review, this Court must accept the state court's decisions as to the application of state law. The Appeals Court made the determination that, under the procedural law of the Commonwealth, petitioner had waived his right to claim ineffective assistance of trial counsel when he did not raise the issue on direct appeal. Secondly, even if it were within this Court's power to overturn that decision, the Court would not find it appropriate to do so. Petitioner's argument loses all credibility on an examination of the record, because on direct appeal he, in fact, did make ineffective-assistance claims based on other underlying grounds. Accordingly, the Court finds that petitioner's claim for ineffective assistance of trial counsel is procedurally defaulted.

### 2. Ineffective Assistance of Appellate Counsel

The government contends that petitioner's claim of ineffective assistance of appellate counsel is also procedurally defaulted as a result of the ruling of the Massachusetts Appeals Court. As discussed above, the Appeals Court did find that petitioner had waived this claim. However, the court did not identify the precise reason for its finding, except to generally cite to the Commonwealth's brief. An examination of the record indicates that the only grounds for finding this claim to be waived would have been that petitioner did not timely file a notice of appeal of his new trial motion, even after he was granted leave to file it late. The timeliness of an appeal is a classic example of a state procedural rule that can constitute an adequate and independent state ground. Accordingly, this Court finds that petitioner's claim of ineffective assistance of appellate counsel is also procedurally defaulted.

Petitioner, however, contends that the ineffective assistance of appellate counsel itself provides good cause to excuse the default. Petitioner—perhaps understandably in light of the Appeals Court's decision not to fully explain its reasoning—misconstrues that court's ruling that his ineffective assistance claims were waived. Petitioner was no longer represented by his allegedly ineffective appellate counsel when he was granted leave to file notice of appeal late. Indeed, the court was undoubtedly motivated to exercise the full breadth of its discretion in granting him leave to file late because he was a *pro se* litigant. It is simply not credible that the ineffectiveness of petitioner's prior appellate counsel caused him to wait more than five years to file his appeal. Accordingly, this Court will not excuse the procedural default.

### III.   Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: January 29, 2013